IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JOY L. HALLIBURTON, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. CIV-13-832-L |
| | ) | (Pottawatomie County |
| JOHNSON & JOHNSON and ETHICON, INC., | ) | Case No. CJ-13-299) |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| KATHLEEN TEAGUE, et al, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. CIV-13-833-L |
| | ) | (Pottawatomie County |
| JOHNSON & JOHNSON and ETHICON, INC., | ) | Case No. CJ-13-305) |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| DIANA WADE, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. CIV-13-834-L |
| | ) | (Pottawatomie County |
| JOHNSON & JOHNSON and ETHICON, INC., | ) | Case No. CJ-13-300) |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| KELLI GOOCH, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. CIV-13-836-L |
| | ) | (Pottawatomie County |
| JOHNSON & JOHNSON and | ) | Case No. CJ-13-312) |
| ETHICON, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | | |
| SARAH RUTH ALLBRITTON, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. CIV-13-838-L |
| | ) | (Pottawatomie County |
| JOHNSON & JOHNSON and | ) | Case No. CJ-13-309) |
| ETHICON, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | | |
| TAMMY McCAUGHTRY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. CIV-13-839-L |
| | ) | (Pottawatomie County |
| JOHNSON & JOHNSON and | ) | Case No. CJ-13-301) |
| ETHICON, INC., | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| INOLA KILLSFIRST, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. CIV-13-840-L |
| | ) | (Pottawatomie County |
| JOHNSON & JOHNSON and | ) | Case No. CJ-13-311) |
| ETHICON, INC., | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| MICHELLE STATES, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. CIV-13-841-L |
| | ) | (Pottawatomie County |
| JOHNSON & JOHNSON and | ) | Case No. CJ-13-313) |
| ETHICON, INC., | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| ILARAE J. PAGE, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. CIV-13-844-L |
| | ) | (Pottawatomie County |
| JOHNSON & JOHNSON and | ) | Case No. CJ-13-302) |
| ETHICON, INC., | ) | |
| | ) | |
| Defendants. | ) | |

| | |
|---|---|
| TERESA MARIE ANDERSON, et al., )<br>)<br>               Plaintiffs, )<br>)<br>v. )<br>)<br>JOHNSON & JOHNSON and )<br>ETHICON, INC., )<br>)<br>               Defendants. ) | No. CIV-13-845-L<br>(Pottawatomie County<br>  Case No. CJ-13-304) |
| VALERIE SPEARS, et al., )<br>)<br>               Plaintiffs, )<br>)<br>v. )<br>)<br>JOHNSON & JOHNSON and )<br>ETHICON, INC., )<br>)<br>               Defendants. ) | No. CIV-13-846-L<br>(Pottawatomie County<br>  Case No. CJ-13-310) |

# **O R D E R**

On July 8, 2013, Joy L. Halliburton and 47 other named plaintiffs filed an action seeking damages in the District Court of Pottawatomie County, Oklahoma. Plaintiffs named as defendants Johnson & Johnson and Ethicon, Inc., two New Jersey companies who are engaged in the business of designing, manufacturing, and distributing pelvic mesh products.[1] Halliburton v. Johnson & Johnson, Case No.

---

[1] According to the Petition, pelvic mesh products "are products targeted at women who suffer from pain, discomfort, and stress urinary incontinence as a result of weakening or damage to the walls of the vagina." Halliburton v. Johnson & Johnson, Case No. CIV-13-832-L, Petition at ¶ 18 (Doc. No. 1-1).

4

CIV-13-832-L, Petition at ¶ 9 (Doc. No. 1-1).  Plaintiffs assert state law claims of negligence, design defect, manufacturing defect, failure to warn, breach of implied warranty, breach of express warranty, deceit by concealment, negligent misrepresentation, fraud and deceit, violation of the Oklahoma Consumer Protection Act, and violation of the Oklahoma Deceptive Trade Practices Act.  In addition, the five male plaintiffs assert a claim for loss of consortium.  While Halliburton is a citizen of the State of Oklahoma, the remaining plaintiffs are citizens of twelve different states, including New Jersey.[2]  Over the next two days, eleven other actions were filed against Johnson & Johnson and Ethicon, Inc. in the District Court of Pottawatomie County.[3]  Each action alleges the same eleven substantive claims against defendants and contains virtually identical allegations as those made in Halliburton.  Likewise, each case has at least one Oklahoma plaintiff and one or more plaintiffs who are citizens of New Jersey.

Notwithstanding the lack of diversity shown on the face of the state court petitions, defendants removed all twelve cases to this court on August 8, 2013. In

---

[2]Plaintiffs are citizens of the States of Ohio, Indiana, New Jersey, Illinois, Georgia, Texas, Colorado, California, Pennsylvania, Arizona, Utah, and Iowa. Halliburton, Exhibit 1 to Petition (Doc. No. 1-1 at 30-31).

[3]The following cases were filed the same day as Halliburton: Anderson v. Johnson & Johnson, Case No. CJ-13-304; Bridgewater v. Johnson & Johnson, Case No. CJ-13-303; McCaughtry v. Johnson & Johnson, Case No. CJ-13-301; Page v. Johnson & Johnson, Case No. CJ-13-302; Teague v. Johnson & Johnson, Case No. CJ-13-305; and Wade v. Johnson & Johnson, Case No. CJ-13-300.  Five additional cases were filed on July 10, 2013: Albritton v. Johnson & Johnson, Case No. CJ-13-309; Gooch v. Johnson & Johnson, Case No. CJ-13-312; Killsfirst v. Johnson & Johnson, Case No. CJ-13-311; Spears v. Johnson & Johnson, Case No. CJ-13-310; and States v. Johnson & Johnson, Case No. CJ-13-313.

5

the Notice of Removal, defendants assert the court has diversity jurisdiction because "[c]omplete diversity of citizenship exists between the *properly* joined parties"[4] and the amount in controversy for each plaintiff exceeds $75,000.  In the alternative, defendants claim the court has jurisdiction over these actions pursuant to the mass action provisions of the Class Action Fairness Act ("CAFA").  *See* 28 U.S.C. § 1332(d)(11).

This matter is before the court on identical motions to remand filed by plaintiffs in eleven of the twelve lawsuits.[5]  Plaintiffs argue diversity jurisdiction does not exist because at least one plaintiff in each case is a citizen of New Jersey, as are defendants.  Plaintiffs also contend CAFA does not confer jurisdiction because the statutory requirements for such jurisdiction have not been met.  Defendants counter that the New Jersey plaintiffs should be disregarded because they were "fraudulently misjoined for the sole purpose of defeating diversity jurisdiction."  Defendants' Response in Opposition to Plaintiffs' Motion to Remand at 1 (Doc. No. 17) [hereafter cited as "Defendants' Response"].[6]  In the alternative, defendants argue the eleven cases should be viewed in the aggregate for purposes of CAFA's mass action

---

[4]Halliburton, Notice of Removal at 2 (Doc. No. 1) (emphasis added).

[5]No motion to remand was filed in Bridgewater v. Johnson & Johnson, Case No. 13-843-L, and that matter has been transferred to the United States District Court for the Southern District of West Virginia for consolidated or coordinated pretrial proceedings in In re: Ethicon, Inc., Pelvic Repair Sys. Prods. Liab. Litig., MDL No. 2327.  Bridgewater, Conditional Transfer Order (Doc. No. 20).

[6]As the motions and responses are virtually identical, all citations are to the papers filed in the Halliburton case unless otherwise noted.

6

provisions and that once the cases are aggregated, the number of plaintiffs exceeds the statute's 100 plaintiff minimum.

Analysis of the jurisdictional issue begins with the concept that federal courts are courts of limited jurisdiction and "there is a presumption against removal jurisdiction." Laughlin v. Kmart Corp., 50 F.3d 871, 873 (10th Cir. 1995). Defendants, as the parties seeking to invoke this court's jurisdiction, have the burden of establishing that the statutory requirements for such jurisdiction have been met. Martin v. Franklin Capital Corp., 251 F.3d 1284, 1290 (10th Cir. 2001). Diversity jurisdiction requires not only that the amount in controversy exceed $75,000.00, but also that each defendant be a citizen of a different state from each plaintiff. *See* 28 U.S.C. § 1332(a); Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 373 (1978). An exception to the complete diversity rule exists with respect to mass actions, which are defined as "any civil action . . . in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact". 28 U.S.C. § 1332(d)(11)(B)(i). With respect to mass actions, only minimal diversity need exist, that is "any member of a class of plaintiffs is a citizen of a State different from any defendant". 28 U.S.C. § 1332(d)(2)(A).

Defendants' first argument implicates the judicially created doctrine of procedural misjoinder, which was first recognized by the Eleventh Circuit in Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353 (11th Cir. 1996), *abrogated on other*

*grounds by* Cohen v. Office Depot, Inc., 204 F.3d 1069 (11th Cir. 2000). In Tapscott, the Eleventh Circuit held that misjoinder of claims against non-diverse defendants, if "egregious", could constitute fraudulent joinder. Id. at 1360. The Court counseled, however, that "mere misjoinder" would not constitute fraudulent joinder. Id. The defendants in the cases at bar ask the court to extend the procedural misjoinder doctrine recognized in Tapscott to the joinder of claims by different plaintiffs. They argue the New Jersey plaintiffs' claims are improperly joined with those of the diverse plaintiffs because the claims do not arise out the same transaction or occurrence. Halliburton, Defendants' Response at 9-17. Defendants contend the court should therefore sever and remand the New Jersey plaintiffs' claims while keeping jurisdiction over the diverse plaintiffs' claims.[7]

While the Court of Appeals for the Tenth Circuit has long recognized the doctrine of fraudulent joinder of defendants,[8] it has not adopted the doctrine of fraudulent misjoinder,[9] much less extended that doctrine to the joinder of claims by different plaintiffs. Moreover, the doctrine has been severely criticized by several courts.

---

[7]Actually, defendants argue *none* of the plaintiffs' claims are properly joined under Oklahoma or federal law. *See* Defendants' Response at 9-17. Nonetheless, they only seek to sever the claims of the New Jersey plaintiffs. Id. at 18 ("The Court should sever the claims of the 7 token New Jersey residents, remand their claims, and exercise its subject matter jurisdiction over the claims of the remaining Plaintiffs all of whose citizenship is diverse from Defendants.").

[8]*See* Smoot v. Chicago, Rock Island & Pac. R.R. Co., 378 F.2d 879, 882 (10th Cir. 1967).

[9]*See* Lafalier v. State Farm Fire & Cas. Co., 391 F. App'x. 732, 739 (10th Cir. 2010) (unpublished).

>Federal courts, however, have not given the doctrine a ringing endorsement. "The theory of procedural misjoinder articulated in *Tapscott* is *inherently ambiguous*" for one reason, because of the confusion surrounding when misjoinder is so "egregious" as to constitute fraudulent misjoinder. *In re Genetically Modified Rice Litigation*, No. 4:06 MD 1811 CDP, No. 4:07 CV 825 CDP, 2007 WL 3027580 at *4 (E.D. Mo. Oct. 15, 2007) (emphasis added); *see also In re Guidant Corp. Implantable Defibrillators Products Liability Litigation*, Civil No. 07-1487 (DWF/AJB), MDL No. 05-1708 (DWF/AJB), 2007 WL 2572048 at *3 (D. Minn. Aug. 30, 2007) (noting that some courts require bad faith while other courts refuse to apply the egregious standard in remand petitions). District courts addressing a procedural misjoinder argument have reached "divergent conclusions on whether (and how) to apply the doctrine" and have determined that the doctrine involves many "unsettled questions." *Geffen*, 575 F. Supp. 2d at 869-70 & n.5; *see also In re Genetically Modified Rice,* 2007 WL 3027580 at *4 (district courts have reached "varying results when faced" with a procedural misjoinder argument); *Robinson v. Ortho-McNeil Pharmaceutical, Inc.*, 533 F. Supp. 2d 838, 842 (S.D. Ill. 2008) (noting that "a survey of case law from courts that have adopted the fraudulent misjoinder doctrine aptly discloses that the contours of the doctrine are anything but clear"); *In re Fosamax Products Liability Litigation*, 1:07-cv-2442, 1:07-cv-9564, 1:07-cv-9485, 1:07-cv-3792 (JFK), MDL No. 1789, 2008 WL 2940560 (S.D.N.Y. July 29, 2008) (noting that district courts appear to be equally divided on the applicability of the doctrine). Courts have criticized *Tapscott* as being "unsupported by Supreme Court precedent, contrary to the narrow construction that is to be given to removal statutes, and needlessly complex." *Frankland v. State Far Fire & Casualty Co.*, No. 2:07-cv-1767, 2008 WL 4072819 at *3 (W.D. La. July 2, 2008). "To say the least, *Tapscott* has been roundly criticized." *Yates*, 2008 WL 4016599 at *7 n.4

Palmer v. Davol, Inc., 2008 WL 5377991 at *3 (D.R.I. Dec. 23, 2008).

9

Given this criticism[10] and the lack of guidance by the Tenth Circuit, the court declines to adopt the procedural misjoinder doctrine and to extend it to the plaintiffs' claims at issue in these actions. If plaintiffs' claims are in fact improperly joined under Oklahoma law, the proper course of conduct for defendants would have been to file a motion to sever in state court and then remove the diverse claims, if any.[11] For this court to rule on joinder issues before determining whether it has subject matter jurisdiction puts the cart before the horse; Rule 82 of the Federal Rules of Civil Procedure does not permit the court to fashion subject matter jurisdiction by using the federal rules governing joinder and severance.[12] As complete diversity did not exist on the date of removal, removal of these actions under 28 U.S.C. § 1332(a) was improvident.

This finding, however, does not end the court's analysis. Defendants also argue that the court has jurisdiction under the mass action provisions of CAFA. The statute provides that a mass action is one "in which monetary relief claims of 100 or

---

[10] *See also* In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig., 2013 WL 3872230 at *11 (E.D. Ky. July 25, 2013) (denying motion to reconsider defendants' misjoinder argument noting that "the Court refused to apply the fraudulent misjoinder doctrine due to the 'unsettled law surrounding the doctrine.'").

[11] *See* Lafalier, 391 Fed. Appx. at 740 ("Nothing in this decision, however, shall preclude the Insurers from presenting their procedural misjoinder argument to the state court. Should the claims be severed, the Insurers may again remove the case . . . if removal is appropriate.").

[12] *See* Jamison v. Purdue Pharma Co., 251 F. Supp. 2d 1315, 1321 n.6 (S.D. Miss. 2003) (Fed. R. Civ. P. 82 violated if court "uses a federal rule to sever the claims in a removed case, if those claims were *properly joined under state law when the suit was originally filed*. Such a reshaping of the action by the district court creates jurisdiction where it did not previously exist.") (emphasis in original).

more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact". 28 U.S.C. § 1332(d)(11)(B). In addition, CAFA requires minimal diversity and that the aggregate amount in controversy exceed $5 million. 28 U.S.C. § 1332(d)(2). There is no dispute that minimal diversity exists in these cases, and plaintiffs do not challenge that the amount in controversy requirement can be met if the cases are combined. The issue before the court is whether the eleven cases can be considered as one for purposes of the 100 person requirement and whether the claims of more than 100 persons are "proposed to be tried jointly".[13]

The Court of Appeals for the Eleventh Circuit recently confronted the very question at issue in these cases, which it characterized as:

> whether a defendant has the right, pursuant to 28 U.S.C. §§ 1332(d)(11), 1441, and 1453, to remove multiple and separate lawsuits to federal court as mass actions if the lawsuits in the aggregate contain 100 or more plaintiffs whose claims revolve around common questions of law or fact, but neither the plaintiffs nor the state court have proposed that 100 or more persons' claims be tried jointly.

Scimone v. Carnival Corp., 720 F.3d 876, 878 (11th Cir. 2013). The Eleventh Circuit answered this question in the negative, as does this court.

---

[13]In this section, defendants do not address whether "plaintiffs' claims involve common questions of law or fact". 28 U.S.C. § 1332(d)(11)(B). In their misjoinder argument, however, defendants strenuously assert that the claims of the individual plaintiffs do not involve common questions. That argument appears to be at odds with their assertion that the cases should be considered one mass action.

11

The Third, Seventh, Ninth, and Eleventh Circuits have held that defendants cannot manufacture CAFA jurisdiction by asking a federal court to aggregate separate cases with fewer than 100 plaintiffs each.[14]  This is because the statute specifically excludes from the definition of mass actions those claims that have been joined on a motion by defendants.  28 U.S.C. § 1332(d)(11)(B)(ii)(II).  Defendants nonetheless argue the court "should not allow plaintiffs to engage in 'artful pleading' to defeat federal subject matter jurisdiction." Halliburton, Defendants' Response at 20.  Plaintiffs, however, are masters of their complaints and may fashion those complaints in a manner that does not invoke federal jurisdiction.  See Standard Fire Ins. Co. v. Knowles, __ U.S. __, 133 S. Ct. 1345, 1350 (2013); St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 294 (1938).  That is exactly what plaintiffs have done here.  Plaintiffs have structured their complaints so that no one complaint has more than 100 plaintiffs,[15] and plaintiffs have definitively announced their

---

[14]Scimone, 720 F.3d at 884; Anderson v. Bayer Corp., 610 F.3d 390, 393 (7th Cir. 2010); Tanoh v. Dow Chem. Co., 561 F.3d 945, 953 (9th Cir. 2009); Abrahamsen v. ConocoPhillips, Co., 503 F. App'x. 157, 160 (3d Cir. 2012), cert. denied, 133 S. Ct. 1820 (2013) (unpublished). Defendants argue that Tanoh was decided before the United States Supreme Court issued its decision in Knowles. Defendants' Response at 23.  While that is true, the Eleventh Circuit issued its opinion in Scimone after Knowles was decided. The Eleventh Circuit distinguished Knowles and another case relied on by defendants, Freeman v. Blue Ridge Paper Prods., Inc., 551 F.3d 405 (6th Cir. 2008), on the ground that both cases "concerned class actions rather than mass actions, [and] never had occasion to interpret the 'are proposed to be tried jointly' language of § 1332(d)(11)(B)(i) or its interaction with the jurisdictional exclusion of § 1332(d)(11)(B)(ii)(II) – which together make clear that plaintiffs retain the ability to avoid federal jurisdiction simply by not proposing joint trial of 100 or more person's claims." Scimone, 720 F.3d at 886.  In addition, the Ninth Circuit recently reaffirmed its decision in Tanoh. Romo v. Teva Pharm. USA, Inc., __ F.3d __, 2013 WL 5314334 (9th Cir. Sept. 24, 2013).

[15]See Halliburton, Exhibit 1 to Defendants' Response (Doc. No. 17-1).

intention not to jointly try the cases. *See* Halliburton, Petition at ¶ 17. Nothing in plaintiffs' complaints or their conduct before the state court or this court amounts to a proposal that the plaintiffs' claims be tried jointly, which the statute requires. As in Scimone, "[e]very step the plaintiffs took was plainly directed toward achieving the exact opposite." Scimone, 720 F.3d at 883. Congress has specifically declared that a case must satisfy certain preconditions before it can be considered a mass action, and the cases at hand satisfy neither the 100 persons nor the joint-trial conditions. Defendants' policy argument that plaintiffs should not be able to avoid federal jurisdiction by filing separate actions is more appropriately directed to Congress rather than this court.

Defendants, as the parties seeking to invoke this court's jurisdiction, have the burden of establishing that the statutory requirements for such jurisdiction have been met. Martin, 251 F.3d at 1290. The court finds defendants have failed to meet their burden. Section 1447(c) provides that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). As defendants have not established that the court has subject matter jurisdiction, remand to state court is required. Plaintiffs' Motions to Remand[16] are therefore GRANTED. In light of this ruling, defendants' Motions to

---

[16]Halliburton (Doc. No. 14); Teague (Doc. No. 14); Wade (Doc. No. 16); Gooch (Doc. No. 17); Allbritton (Doc. No. 16); McCaughtry (Doc. No. 15); Killsfirst (Doc. No. 18); States (Doc. No. 18); Page (Doc. No. 16); Anderson (Doc. No. 16); and Spears (Doc. No. 15).

Stay All Proceedings Pending Decision to Transfer to MDL No. 232, *In Re Ethicon, Inc., Pelvic Repair System Products Litigation*[17] are DENIED as moot.

It is so ordered this 18th day of October, 2013.

*Tim Leonard*
TIM LEONARD
United States District Judge

---

[17]<u>Halliburton</u> (Doc. No. 10); <u>Teague</u> (Doc. No. 10); <u>Wade</u> (Doc. No. 10); <u>Gooch</u> (Doc. No. 10); <u>Allbritton</u> (Doc. No. 10); <u>McCaughtry</u> (Doc. No. 10); <u>Killsfirst</u> (Doc. No. 9); <u>States</u> (Doc. No. 10); <u>Page</u> (Doc. No. 10); <u>Anderson</u> (Doc. No. 10); and <u>Spears</u> (Doc. No. 10).